DANIEL A. HANEY, APPELLANT, v. VILLAGE OF HYANNIS, APPELLEE.

FILED NOVEMBER 12, 1914. No. 17,849.

Municipal Corporations: SUIT TO DISCONNECT LAND: SUFFICIENCY OF EVIDENCE. The evidence examined and set out in the opinion, *held*, ample to sustain the judgment of the district court.

APPEAL from the district court for Grant county: JAMES R. HANNA, JUDGE. *Affirmed.*

*Sullivan & Squires,* for appellant.

*Boyd* and *Barker, contra.*

FAWCETT, J.

Plaintiff instituted this action in the district court for Grant county, for the purpose of having certain land disconnected from the village of Hyannis. Upon a full hearing after issues joined, his petition was dismissed for want of equity. From this judgment he appeals.

The statute under which plaintiff proceeded is section 8978, Ann. St. 1911, which provides that, if "justice and equity require that such territory, or any part thereof, be disconnected from such city or village," the district court shall enter a decree accordingly. The law upon the question involved is well settled in this state. In *Village of Wakefield v. Utecht,* 90 Neb. 252, we held: "In an action to annex additional territory to a village, the burden is upon the village to establish by sufficient averments and evidence that the territory sought to be annexed will be benefited by the annexation, or that justice and equity require that such territory be annexed." By analogy the holding must necessarily be that, in an action to disconnect territory, the burden is upon the petitioner to establish by sufficient averments and evidence that justice and equity require that such territory be disconnected. In *Chapin v. Village of College View,* 88 Neb. 229, we held that a judgment of the district court in a proceeding to exclude territory from the boundaries of a municipal corporation will not be set aside on appeal, unless it is made to appear that the trial court committed an important mistake of fact, or made an erroneous inference of fact or of law. On page 231 will be found a citation of former decisions of this court to the same effect.

Plaintiff purchased the land, which he now seeks to have disconnected, about five years prior to the commencement of this action, which was several years after the incorporation of the defendant, so that he purchased it with full knowledge that it was within the limits of the village.

By his own testimony he shows that he is the owner of a stock ranch about 30 miles from the village, upon which, at the time of the trial, he had between 500 and 600 head of horses and cattle; that he had upon the ranch a dwelling-house and barn and sufficient accommodations for his wife and five children, and that his family had lived upon the ranch prior to the purchase of the village property; that his purpose in purchasing the village property was "to get close to a school;" that at the time of the trial he had four children of school age, one of whom was in the eighth grade and would pass into the high school the next year; that, with one possible exception, the high school in Hyannis is the only high school in the county; that he is not engaged in any business in Hyannis, but spends the major portion of his time upon his ranch, his family living in the home which he has established upon the property in controversy; that all of the 50-acre tract in controversy, except some five or six acres on which he maintains his home, is rough land and used by him for pasture; that all of the stock he keeps in the village is a cow and one team for the use of his family; that he occasionally has four horses there when he is "freighting." He testified that he farmed from four to six acres of the land in connection with his village home. On cross-examination he shows that that is all the land there is fit to farm. "Q. And where you raise a garden? A. Raise some corn and potatoes and garden. Q. And that was for you and your family there, wasn't it? A. Yes, sir. Q. And corn for your team? A. No; I didn't raise any corn to speak of. Q. When you told the court you were farming it, you meant to say you were gardening it? A. I have it in alfalfa, some of it. Q. How much? A. Two or three and a half or four acres." He further testified: "Q. Do you make any of your living off of this place, with the exception of what you raise in your garden and what alfalfa you raise for your team? A. No. Q. You make your living from your ranch? A. Principally, yes. * * * Q. All that you farm there or use for any agricultural purposes is a little over five acres? A. About five or six. Q. And that's the

Haney v. Village of Hyannis.

part you just use for your home purposes, and don't attempt to make a living there, do you, simply a little side issue with you there, isn't it?. A. Yes, sir.  *  *  *  Q. State what benefit anybody else off Main Street enjoys that you haven't enjoyed during the last six years.  A. Well, I don't call any to mind now." A short time prior to the commencement of this action the village voted $8,800 for the construction of a water-works system. Prior thereto it is evident that plaintiff was entirely satisfied with conditions existing in the village, but the issuance of water bonds did not meet his approval. He testifies that he voted against issuing the bonds. When asked why he did so, he answered: "I didn't feel able to pay the tax. Q. You felt you were too far away to get the use of this water at first? A. Yes, sir. Q. You didn't think you were going to get any of this water? A. I don't think I am." Outside of the indebtedness about to be incurred upon the water bonds, the village seems to have been in a very prosperous condition, so much so that it had no bonded indebtedness, and during the year 1911 no taxes were levied for any purpose whatever. Plaintiff's reason for thinking that he would not derive any benefit from the water-works about to be installed is based upon the fact that on the initial instalment of water-works the plans contemplate only the extension of mains through the main street and the main part of the village; plaintiff's land being on the eastern limits of the village. This fact is far from showing that extensions will not be made in course of time as fast as the funds and necessities of the village will warrant the making of such extensions.

In the light of the above facts, the district court very properly dismissed plaintiff's petition for want of equity.

AFFIRMED.

LETTON, ROSE and SEDGWICK, JJ., not sitting.